21-2073 United States v. Reed. Mr. Hotchkiss, when you're ready. May it please the court. Mr. Keeney, I'm Todd Hotchkiss. I represent the appellant Jason Reed. Mr. Reed pleaded guilty to one count of felon in possession of a firearm, was adjudicated an armed career criminal at sentencing, and was sentenced to 15 years in prison. We have two sets of issues on appeal. Each of them involve a sub-issue of whether it survives the waiver of appeal. Counsel, let me ask you this. I'm breaking your train of thought, but I need you to help me to understand exactly what your argument is in regards to this. Because looking at what the district court did, it looked like he was referring to Rule 11 and went through that colloquy with your client. And then here on appeal, though, it appears that you could be shifting your argument to a Sixth Amendment type of argument and not the 11th, Rule 11th argument. So which is your actual argument? Because it also will standard of review that we would look at this. Your Honor, down below I made the motion was under both Rule 11 and as an ineffective assistance of counsel claim. I think even the District Judge Riggs recognized that it was basically an ineffective assistance of counsel claim. So that's... A Sixth Amendment argument is what you're arguing. Correct. Ineffective assistance in validating the plea agreement as a result of the ineffective assistance of counsel. Thank you. I just wanted to have it in my own mind. Yes. The waiver of appeal regarding that issue, ineffective assistance of counsel, since the government has stated in its briefs that, in its answer brief, that it's appropriate for this court to hear it, it was fully litigated. The judge issued a decision on it and that they are withdrawing their argument. As far as it, unless the court has questions about it, I'll move on. If we conclude that there was no ineffective assistance of counsel, does the appeal waiver then still apply here? The waiver does not apply under the second issue. If you rule there is no ineffective assistance of counsel, I have arguments about the waiver pertaining to the second issue when I said that you're going to leave that argument now. And I was wanting to be sure to ask you, how do you handle the Gordon case of this circuit? The Gordon? Gordon. Gordon case. I believe that the Gordon case is dealt with by the Washington case. We believe that while the Washington case was a trial case, the advice here about whether Mr. Reid should proceed with a plea was a sentencing assessment. And I understand that typically under law, estimates of the guidelines, that's not a mis-estimate, a mistake in estimating, is not a basis for ineffective assistance of counsel. What we have here, though, is an attorney who relied on completely inapplicable state law and state law that is actually contrary to the ACCA federal statute. Counsel, your client knew that he was potentially ACCA eligible, right? That is, that is clear from the record. So if a defendant knows that ACCA could apply, doesn't that automatically preclude a finding of prejudice? It cannot, because the attorney still has a duty as reflected by Lafler versus Cooper. It's critical to a defendant to receive the advice of counsel. That's what counsel is there for. And that's what the issue is, ineffective assistance of counsel. And when I represent my clients, I'm all they have. They rely on my advice. And also, in the District of New Mexico, for basically every felon in his plea agreement, has these advisories in case it's a catch-all. And everybody is advised by the court. His ACCA predicates were listed in his plea agreement. It wasn't just generic language, right? I disagree with that. They were not listed. There were two listings. There were two listings. And this is the mistake that his counsel made. His counsel assumed that the group of federal convictions was only one. And the counsel relied on inapplicable state law regarding the New Mexico habitual offender statute, an entirely different statute, that says, as the government pointed out in its answer brief at 8, that for it to be the standard under the ACCA is on occasions different from one another. Under the state habitual offender act, you have to have conviction, finality, conviction, finality, conviction, finality. It's entirely different. That's why Mr. Gonzalez testified that he advised that the ACCA would not apply. And that's completely inapplicable and wrong. And that's what Mr. Reed relied on. Mr. Gonzalez and Mr. Reed both testified. Counsel, wait a minute. I'm looking at what happened and going back to the judge's question. The defendant on stand at the hearing that was had said that his counsel told him that he could not promise him anything about that sentence. And the district court would have the final say in regards to this. So it's not as clear cut, I believe, what the record's showing. Because he knew and he also testified that he knew that there could be a different sentence. So, Your Honor, it would seem to me Your Honor is saying that unless an attorney makes a promise to a defendant, the attorney does not make any advice to the defendant? Is that what you do, Counsel? You promise them absolutely that when you tell them that, that that's the sentence they're going to get? No, that's my point. That's my point. No, Your Honor, it's the opposite of that. I give my clients advice. And I'm required to give my clients advice. And that's what Lafler v. Cooper requires me to do. And that's what Mr. Gonzalez did without making a promise. Because you cannot make a promise. That would invalidate the plea agreement. Well, it sounds to me like you and I have a disagreement as to what advice may be. Well, or what a promise or lack of a promise is. Lack of a promise does not absolve the attorney of an ethical duty to provide advice to a defendant. Well, the former counsel, everybody knew that ACT might apply because it's in the plea agreement and was at the colloquy, et cetera, et cetera. And, you know, so it seems in that regard it's different than the Washington case that you mentioned. And the former attorney's making a prediction about what the sentence is going to be. And he's predicting that ACA won't apply and the sentence will be zero to whatever. And he's predicting that, you know, that ACA will not apply. And if it does, it would be 15 to life. And that's set forth in the plea agreement. So, you know, why is this a case? You know, and the case law seems to say a mistaken prediction is not deficient performance. And what takes that, you know, this case out of that kind of garden variety prediction case law? It is, with all due respect, it doesn't appear to me to be a garden variety case when an attorney relies on completely inapplicable law that is not only inapplicable, but contrary to the law of the statute that they are advising on. So are we looking at, and I don't mean to interrupt your answer to Judge Timkovich's question, but are we looking at what the lawyer relied on or are we looking at the ultimate issue in the case? I mean, does it really matter what he relied on? At the end of the day, the advice that he gave was you might be exposed to ACA. At the end of the day, he told the advised Mr. Reed that in his opinion, ACA wouldn't apply. And yes, it does matter because otherwise we're just potted plants. We're just potted plants. The Sixth Amendment requires an attorney to provide competent advice. I do not see how relying, and the law is that while a mistaken estimate is not ineffective, if the case shows a lack of understanding of the mechanics of the law, that's an exception to that. And that's what we have here. This is so not ordinary. I mean, does the case turn on something so fine as the lawyer saying ACA might apply, in which case I guess we wouldn't be here, versus ACA won't apply? And I hear you saying the advice given to Mr. Reed was that ACA won't apply, right? That was the advice. Am I right if he said it might apply? Would your argument be elucidated? Well, the record is that Mr. Gonzalez didn't even request a Form 13, and he testified he did that because he was so confident in his perspective. And even at the hearing, he maintained his position, undaunted, that even if he had looked at the third conviction, he said that he probably would have advised Mr. Reed that it still didn't apply. That's how strong Mr. Gonzalez was here. So it does matter. The reasons why mattered in Washington. The attorney had no experience. This court held that that mattered. It matters here. Counsel, I'm interested in hearing also your argument to your second point in reference to the case of United States versus Mitchell, I believe it is, and what this court held of that. So I am interested in hearing your second point. My second point, I did not brief United States versus Mitchell, Your Honor, so I am unable today to address that. Well, it seems to go to this very question, which is an interesting question, by the way, that you're raising on this power. But it seems like in that case, as I recall, Judge Seymour said that that was the exception, kind of like to Apprendi, that on prior cases, the court could handle that. Your Honor, I'm very familiar with the point through Moore and Rydins, but not through Mitchell. My apology. Let me address the waiver issue first, because we don't get to anything else without the waiver issue. The waiver issue, I think, is quite clear. The waiver about this issue pertained to advisory guideline sentences. There's nothing advisory about a mandatory statutory minimum sentence. It does not fall within the waiver. Furthermore, even as a guideline sentence, it was a guideline sentence under 5G1.1b, which just says the guideline sentence is a statutory mandatory minimum sentence. So that doesn't make it a guideline sentence? It does not make it an advisory guideline sentence, which is what the waiver says. Furthermore, at the change of plea hearing, the defendant was advised not only advisory, but that it's not binding, and that it's a mere recommendation. Well, that's completely false about a statutory mandatory minimum sentence. So the waiver does not apply. That's just my simple argument regarding that. Furthermore, I guess there's an additional waiver regarding sentencing factor. I took that to mean, as a phrase of art, sentencing factors under 3553a. And this isn't one of those issues. The argument is about the power of the court to make the factual findings. So that's my argument regarding the waiver on that issue. Your Honor, my argument is basically evolutionary. Everything that, it's evolutionary, but with one additional point, Your Honor. And that is that it clearly, the law clearly says, the evolving law, is that if a fact has to be found to increase, in this case, I'll use this case, it was zero to 10 under 922g, to apply ACCA and the 15 to life, that would mean an increase, there was no mandatory minimum under felon in possession, you get a mandatory minimum of 15, which is 50 percent larger than the previous maximum. And then you get a maximum sentence of life under ACCA. So you get both. Did the Supreme Court just two or three, four weeks ago say that this issue is still open? And if it's still open, the Tenth Circuit, we're bound to follow prior precedent of our circuit. So if it's still open, and the cases say that it is a judge on prior sentences, the judge can do that. Isn't this panel bound by that? That's a very difficult question for me to answer. Typically, the answer is yes. I ask you to understand my argument that this is an evolving nature. And my last point, if I may. Please. Thank you. And that is that this just isn't checking a box about whether there are prior convictions. The factual findings are not just three prior convictions, but there have to be factual findings of serious drug offense for each of those convictions. And then secondly, that each of them occurred on occasions different from one another. Those are factual findings that go beyond just checking a box. And I believe, I submit to the court, that based on the evolving nature of the law and the cases that I cited in my brief, that those factual findings are very similar to the kinds of factual findings that judges used to make at sentencing, but they can no longer make at sentencing under the Sixth Amendment. Thank you for your time and attention, Your Honors. We request that you reverse Mr. Reed's conviction and remand for a new trial. Thank you, Mr. Hodgkiss. Let's hear from the government. Good morning. May it please the court. My name is Emil Keeney. I'm with the U.S. Attorney's Office in New Mexico. Counsel, how can a defendant make a reasonably informed decision about how to plead in federal court if his lawyer is advising him based on state law? Well, he was informed, though, that an ACCA sentence was still possible for him on multiple occasions, and he decided to plead anyway. So he's informed. Also, his counsel made it clear to him that he wasn't making any promise as well. So he is informed of the counsel's prediction, but he's also reasonably informed of what the district court could do and that it was the district court's sole decision on what to do. So I think basically that would be, for us, we think prejudice is how this court, the lack of prejudice is how this court should resolve this case on that first claim. I'm tough on opposing counsel in regards to this, but it just seems to me that relying on a New Mexico case as the basis of saying you're not going to be subject to the ACCA when it's a federal matter going on, I mean, come on, that just, that smacks, I don't know, it just smacks of, you know, not being a good lawyer or just ignorance, and some people could say stupid, I guess. That just doesn't seem to be very good advice. It's his advice. I'm sorry, Your Honor. Go ahead. He was wrong, and we've said in our brief he was wrong about that. He said he was partially informed by New Mexico law. He didn't say what he was informed by. So you're conceding the first prong of Strickland? No, Your Honor, because under this court's case law, mistakes in advising and predicting or calculating a sentence don't rise to the level of deficient performance, and that's what this court held in Gordon. But that's assuming that Gordon applies here and not Washington, right? Right, right, and I can address that, because I think that's the main question this court, on the deficient performance prong that the court has to, may need to resolve. And so I think that applying Washington in this case and its language about mechanics would, I think that would give that language an overly broad reading. What the court in Washington distinguished between, and it used this language, it distinguished between a counsel's misinformation, miscalculation, ordinary errors in calculating or predicting a sentence versus complete unfamiliarity with the law in question and said that the counsel, the court said counsel wasn't, or at least counsel's complete unfamiliarity led to the defendant in that case being never in any way informed about the risks that the defendant faced in going to that pre-sentence interview. But I think this... It's a fine line though, I mean, if we're talking about some form of malpractice, legal malpractice, I guess, you know, it's the lawyer has misunderstood the applicable law and which I guess happened here. And, you know, it has a fairly substantial real world effect. And, you know, why is this type of legal error excusable? You know, in the Reid case, why is it excusable? And, you know, in Washington, the legal error was not understanding what the interview might lead to relevant conduct increases. I mean, what really is the difference? I mean, we're talking about legal malpractice, you know, the lawyer misinformed his client, you know, it wasn't the guideline range, I guess. In fact, it effectively was. But, you know, isn't really this a species of legal error that's not much different than Washington? Well, it is different than Washington. Here, the counsel informed the defendant that ACCA was a possibility. He informed him that he could be subject to it. He told him that he had some priors. He told him that the district court judge might sentence it to him. He made a mistake though in applying ACCA to the particular facts of his client's case. And that's similar to the sort of errors in Gordon and Silva and Hamilton and the other cases that I've cited in our brief and the district court cited in its opinion. They're very similar legal errors. For example, in one case, the defense counsel mistook or failed to advise his client that he was statutorily ineligible for a safety valve reduction. And there's similar errors of that this court has held don't rise to the level of deficient performance. You commented about, in your colloquy there, about Gordon and looking at it a little bit different. But why doesn't Gordon, as far as the Tenth Circuit is concerned, we have to follow Gordon in its outcome in regards to this very similar claim that's being made here by the district? Well, then tell us what you think Gordon says because it's bothering me because that's what's sticking in my craw right now is that does or does not Gordon fit the facts of this case, even though it may be on a little bit different constitutional issue. When Gordon, the defense attorney, told his client, relevant conduct is not going to apply to you at all. Your criminal history is not going to apply to you at all at sentencing. It's not even going to come into it. And that's just flat out wrong. But this court, nevertheless, held that that didn't rise to the level of deficient performance. So this is another error. It is flat out wrong, what defense counsel told his client here. But I don't see any basis for distinguishing it from Gordon. But I also don't think the court has to draw what you refer to as perhaps a fine line between Gordon and Washington in this case, because the defendant also has to prove a lack of prejudice. And he was informed in his discussions with his attorney at the plea hearing itself. He testified. He said he understood that he could be subject to ACCA. And in the testimony that he gave at the hearing on the motion to withdraw, he said, I understood my counsel attorney wasn't making me any promises. And the attorney himself said, I didn't make him any promises. The other factor the court can consider in determining whether there's prejudice is also the strength of the government's case. We shouldn't forget that the reason that he was interested in a plea deal to begin with is because his DNA was found on the whether if he knew all of that information, I think the district court could reasonably determine that he wouldn't have done so and that he wasn't prejudiced because he knew that this was a sentence possibility for him. On respect to the, if you like, I can I can turn to the second claim. I know you had some questions about that. But the thing on the appeal waiver, I think it falls he waived the right to appeal any sentence within or below the applicable advisory guideline range as determined by the court. So the plain language of that would not cover this claim, right? Oh, it does. It's still an advisory guideline range sentence. The district court could have departed, for example, above the statutory minimum, a mandatory sentence. So it still falls within it. And the whole idea that I'm just attacking facts underlying the factual determinations underlying the sentence and not the sentence itself, I don't think that's a distinction that that holds up because what the defendant wants on the second claim is an alteration of his sentence. He doesn't want just a declaration that whether the district court could find these facts within the scope of the apprendee exception itself. I think this court is correct that or one of you mentioned the Michael or Mitchell decision. That squarely holds that decisions about whether previous predicate crimes occurred on occasions different from one another are within the scope or inherently intertwined with the fact of a prior conviction. And I'm not aware of any circuit that has ruled to the contrary. So unless the court has any other questions, I would ask that you affirm. Thank you, counsel. We appreciate your argument. Thank you. The case is submitted.